UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACKSON B.,

                       Plaintiff,                         **DECISION
and
ORDER**

           v.

KILOLO KIJAKAZI,[1] Acting Commissioner of          **20-CV-495F**
  Social Security,                                            (**consent**)

                       Defendant.
_____

APPEARANCES:              LAW OFFICES OF KENNETH R. HILLER
                                      Attorneys for Plaintiff
                                      KENNETH R. HILLER, and
                                      ELIZABETH ANN HAUNGS, of Counsel
                                      6000 North Bailey Avenue
                                      Suite 1A
                                      Amherst, New York  14226

                                      JAMES P. KENNEDY, JR.
                                      UNITED STATES ATTORNEY
                                      Attorney for Defendant
                                      Federal Centre
                                      138 Delaware Avenue
                                      Buffalo, New York  14202
                                            and
                                      PADMA GHATAGE
                                      Special Assistant United States Attorney, of Counsel
                                      Social Security Administration
                                      Office of General Counsel
                                      26 Federal Plaza
                                      Room 3904
                                      New York, New York  10278

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On April 6, 2021, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 16). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 12, 2021 (Dkt. 14), and by Defendant on March 12, 2021 (Dkt. 15).

**BACKGROUND**

Plaintiff Jackson B. ("Plaintiff"), brings this action seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on November 7, 2016 for Social Security Disability Insurance ("SSDI") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act (together, "disability benefits"). Plaintiff alleges he became disabled on June 1, 2015, based on epilepsy and Asperger's syndrome. AR[2] at 185, 192, 204, 209. Plaintiff's applications initially were denied on February 16, 2017, AR at 96-98, and at Plaintiff's timely request, AR at 129-30, on December 17, 2018, a hearing was held in Lawrence, Massachusetts via video conference before administrative law judge ("ALJ") Anthony Dziepak ("the ALJ"). AR at 47-82 ("administrative hearing"). Appearing and testifying at the administrative hearing were Plaintiff, located in Jamestown, New York, represented by Kristin M. Lee Yaw, Esq., and vocational expert Larry Takki ("the VE") testified from Lawrence, Massachusetts.

---

[2] References to "AR" are to the page numbers of the Administrative Record Defendant electronically filed on November 13, 2020 (Dkt. 13).

On January 7, 2019, the ALJ denied Plaintiff's claim, AR at 27-46 ("ALJ's decision"), and Plaintiff timely filed a request for review of the ALJ's decision by the Appeals Council.  AR at 179-84.  On March 2, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, AR at 1-6, thereby rendering the ALJ's decision the Commissioner's final determination on the claim.  On April 24, 2020, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On January 12, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 14) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 14-1) ("Plaintiff's Memorandum").  On March 12, 2021, Defendant moved for judgment on the pleadings (Dkt. 15) ("Defendant's Motion"), attaching the Commissioner's Brief in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 15-1) ("Defendant's Memorandum").  Filed on April 11, 2021 was Plaintiff's Reply Brief to Defendant's Motion for Judgment on the Pleadings (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.  The Clerk of Court is directed to close the file.

## **FACTS**[3]

Plaintiff Jackson B. ("Plaintiff"), born March 6, 1994, was 22 years old when he initially applied for disability benefits on November 7, 2016, and 24 years old as of December 17, 2018, the date of the ALJ's decision.  AR at 41, 185, 192, 204.  Plaintiff lived with his father in an apartment, AR at 43, 199, 226, 231, 234, is single, never

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

married, and has no children.  AR at 41-42, 185-86, 192, 232.  Plaintiff attended school through the 10th grade in special education classes, and obtained a graduate equivalency degree ("GRE"), but has not completed any specialized job training, trade or vocational school.  AR at 52, 210.  Because of his epilepsy, Plaintiff has never obtained a driver's license and relies on others for rides.  AR at 61, 232, 234.  Plaintiff assists his mother with her commercial retail establishment three or four days a week.  AR at 61.

Plaintiff describes his activities of daily living as including preparing simple meals, eating, showering, doing housework, yard work except for mowing the lawn which is too dangerous given Plaintiff's epileptic seizures, reading, watching television, praying, taking medication, looking for work, shopping for toiletries, resting, attending church, and playing his guitar.  AR at 231, 233-35.  Plaintiff's past relevant work includes brief stints as a dishwasher and cleaner at a fast food franchise, and as an attendant at a recyclable can redemption center.  AR at 218-20.  Reginald Smith ("Smith"), an associate with Aspire of WNY ("Aspire") (developmental disability support services organization), is trying to help Plaintiff find employment, AR at 74-75, 231, but Plaintiff maintains he has been unable to find employment either because potential employers are not interested in hiring Plaintiff because of his epilepsy or because Plaintiff cannot provide his own transportation.  AR at 62, 209.

In connection with his disability benefits application, on January 24, 2017, Plaintiff underwent a consultative internal medicine examination by Michael Rosenberg, M.D. ("Dr. Rosenberg"), AR at 322-24, and 829-32, and a consultative psychiatric evaluation by psychologist Rebecca Billings, Ph.D. ("Dr. Billings"), AR 326-32.  On

February 16, 2017, State agency medical consultant H. Tzetzo, M.D. ("Dr. Tzetzo"), reviewed Plaintiff's medical records.  AR at 83-95, 98-105.  From November 2016 to September 2018, Plaintiff received cognitive therapy from psychologist Kelly Burkhouse, Ph.D. ("Dr. Burkhouse") at Family Services of the Chautauqua Region ("FSCR").  AR at 427-34.  Plaintiff underwent two separate psychological assessments Dr. Burkhouse including on October 28, 2016, AR at 301-310, 334-37, and on July 23, 2018, AR at 334-37.  Plaintiff received treatment for his epilepsy from Robert L. Glover, M.D. ("Dr. Glover") at University Neurology Inc., at Main – General ("University Neurology"), AR at 435-46, 456-58, 485-87, and on October 3, 2018, Plaintiff underwent a neurological consultation at University Neurology with board certified clinical neurologist Joy Parrish, Ph.D., ABPP ("Dr. Parrish").  AR at 460-63.  Plaintiff received primary care through Westfield Family Physicians ("Westfield Family").  AR at 278-300, 348-412.

## DISCUSSION

1.      **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).

In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 58-59 (2d Cir. 2013) (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original). Indeed, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B.*, 523 Fed.Appx. at 59.

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

**2.      Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The five steps include (1) whether the plaintiff is currently engaged in substantial gainful activity ("SGA"), 20 C.F.R. § 404.1520(b) and § 416.920(b); (2) whether the plaintiff has at least one severe impairment limiting his mental or physical ability to perform basic work activity, 20 C.F.R. § 404.1520(c) and § 416.920(c); (3) whether the plaintiff's severe impairments, considered together, meet or equal a listing in 20 C.F.R. Part 404, Subpt. P, Appendix 1 of the regulations, and meet the duration requirement of at least 12 continuous months, 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d), (4) whether the plaintiff, despite his collective impairments, retains the "residual functional capacity ("RFC") to perform his past relevant work ("PRW"), 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and (5) if the plaintiff cannot perform his PRW, whether any work exists in the national economy for which the Plaintiff, given the applicant's age, education, and past work experience, "retains a residual functional capacity to perform. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).

The claimant bears the burden of proof for the first four steps of the sequential analysis, with the Commissioner bearing the burden of proof on the final step.  20

C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

      In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI through September 30, 2015, AR at 32, Plaintiff has not engaged in SGA since June 1, 2015, his alleged disability onset date ("DOD"), *id*., and has the severe impairments of seizure disorder, autism spectrum disorder, and affective and anxiety disorders, *id*., but that Plaintiff's diagnosed mathematics learning disorder, right hand contusion, allergic rhinitis, and vitamin D deficiency are non-severe impairments, *id*. at 32-33, Plaintiff's possible alcohol and marijuana abuse are not medically determinable impairments, *id*. at 33, and that Plaintiff does not have an impairment or combination of impairments, including both severe and non-severe impairments, that meets or is medically equal to the severity of a listed impairment.  *Id*. at 33-34.  The ALJ further found that despite his impairments, Plaintiff retains the RFC for a full range of work at all exertional levels with some non-exertional limitations including no climbing of ladders, ropes, or scaffolds, no work involving exposure to unprotected heights, operating a motor vehicle, or similar equipment such as a forklift, or working with heavy moving machinery, that mentally Plaintiff is capable of performing simple repetitive work tasks involving no interaction with the public as part of the essential job duties, as well as only occasional interaction with supervisors and coworkers, but no team or tandem

collaborative type work, is able to make simple work-related decisions such as recognizing a safety issue or needing additional supplies, is able to adapt to simple changes to a work routine such as introduction of a new coworker or supervisor, as well as physical relocation of a work station within a facility for a shift, and is able to be off-task up to five minutes an hour while having no impact on daily production expectations. AR at 34-39.  Plaintiff has no PRW, AR at 39, but given his age, education, and ability to communicate in English, and in the absence of any transferable skills given Plaintiff's limited PRW, is able to perform jobs existing in the national economy including as a hand packager, industrial cleaner, subassembler of electronics, and price marker.  AR at 39-40.  As such, the ALJ found Plaintiff was not disabled as defined under the Act at any time through the date of the ALJ's decision.  *Id*. at 40.

In support of his motion, Plaintiff argues the ALJ erred beginning at step three of the five-step sequential analysis by failing to find Plaintiff meets the criteria to be considered disabled based on Listing Impairment 12.02 pertaining to neurocognitive disorders, Plaintiff's Memorandum at 17-23, and at step four, failed to give good reasons for rejecting Dr. Burkhouse's July 23, 2018 function-by-function assessment of Plaintiff's mental functioning, *id*. at 23-28, and the ALJ's focus on Plaintiff's supposed willful non-compliance with medications and alcohol abuse was improper in light of Plaintiff's neurological, cognitive and psychiatric impairments.  AR at 28-29.  In opposition, Defendant argues substantial evidence in the record supports the ALJ's finding that Plaintiff's impairments do not meet the criteria for disability based on Listing 12.02, Defendant's Memorandum at 15-20, substantial evidence also supports the weight the ALJ gave to all opinions of record, *id*. at 5-13, and the ALJ's consideration of

Plaintiff's non-compliance with prescribed treatment and alcohol abuse was proper. *Id*. at 13-15.  In reply, Plaintiff maintains Defendant's arguments fail to overcome the ALJ's clear error requiring remand.  Plaintiff's Reply at 1-6.  There is no merit to Plaintiff's arguments.

Insofar as Plaintiff maintains the ALJ failed to evaluate Plaintiff's impairments under the criteria for Listing Impairment 12.02 ("Listing 12.02"), pertaining to neurocognitive disorders, Plaintiff's Memorandum at 17-23, mental disorders are set forth under category 12.01 of the Listings and include, *inter alia* and as relevant here, 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.10 (autism spectrum disorders).  Disability based on any of these four listed mental disorders requires satisfying the criteria set forth under two of three paragraphs, being paragraphs A, B and C.  For each of these four listed impairments, the paragraph A criteria specify the symptoms relevant to the particular impairment, whereas Paragraphs B and C criteria are the same for Listing Impairments 12.02, 12.04, 12.06, and 12.10.[5]  Significantly, the ALJ separately considered whether Plaintiff was disabled only under Listings 12.04, 12.06 and 12.10, but not under Listing 12.02; nevertheless, the ALJ found the medical evidence in the record failed to establish Plaintiff satisfies the criteria of either paragraph B or C which are relevant to Listings 12.02, 12.04, 12.06 and 12.10.  AR at 33-34.  In particular, the paragraph B criteria requires extreme limitation in one, or marked limitation in two domains of mental functioning, including the ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or

---

[5] The court notes Listing Impairment 12.10 requires satisfying both paragraph A and B criteria, and does not include the alternative paragraph C criteria.

maintain pace; and (4) adapt or manage oneself.  The ALJ found Plaintiff only mildly limited in his ability to understand, remember or apply information, and moderately limited in his ability to interact with others, concentrate, persist or maintain pace, and adapt or manage himself.  Thus, the ALJ found Plaintiff does not meet the paragraph B criteria.  The alternative paragraph C criteria require that the particular mental disorder be "serious and persistent" with a medically documented history of the disorder for at least two years, with evidence of both (1) medical treatment, mental health therapy, psychological support, or a highly structured setting that is ongoing and diminishes the signs and symptoms of the mental disorder, and (2) marginal adjustment, meaning the claimant has minimal capacity to adapt to changes in the environment or to demands not already part of the claimant's daily life.  Here, the ALJ found the medical evidence does not reflect the requisite ongoing medical treatment, mental health therapy, psychosocial support, or a highly structure setting that diminishes Plaintiff's symptoms with marginal adjustment such that Plaintiff does not meet the paragraph C criteria.  *Id*. at 33-34.  Because disability under Listing 12.02 also requires Plaintiff meet the criteria under paragraph B or C, the ALJ's failure to specifically analyze Plaintiff's mental condition according the Listing 12.02 is harmless error.  *See Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (declining remand where application of the correct legal principles could only lead to the same conclusion that the claimant was not disabled).  Accordingly, the ALJ's failure to separately consider Plaintiff's mental impairment under Listing 12.02 does not support remand.

Nor did the ALJ fail to properly evaluate Plaintiff with regard to the paragraph B criteria, as Plaintiff argues. Plaintiff's Memorandum at 20-23.[6] Plaintiff maintains the ALJ failed to consider Dr. Parrish's October 3, 2018 evaluation that establishes Plaintiff had marked or extreme limitations in the paragraph B domains of understanding, remembering or applying information and adapting and managing oneself. *Id*. In opposition, Defendant argues the ALJ briefly discussed Dr. Parrish's report in the RFC analysis, and was not required to separately discuss the two paragraph B domains for which Plaintiff maintains the criteria are met. Defendant's Memorandum at 17-18 (citing cases). Here, a plain review of the record supports that ALJ's evaluation of the paragraph B criteria.

In particular, the ALJ considered Dr. Billings's finding that Plaintiff was unlimited in his ability to follow and understand simple directions and instructions, independently perform simple tasks, maintain attention and concentration, learn new tasks, and independently perform complex tasks. AR at 331-32. The ALJ also considered that Plaintiff, on his Function Report completed in connection with his disability benefits applications, reported he can count change, handle a savings account, participate in such activities as playing a guitar, sing, and play cards. AR at 235. This evidence supports the ALJ's finding that Plaintiff is not markedly limited in the paragraph B domains of understanding, remembering or applying information and adapting and managing oneself. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If

---

[6] Plaintiff's argument that the ALJ failed to properly evaluate Plaintiff's mental impairment under paragraph B is asserted with respect to both consideration of Listing 12.02, as well as consideration of Dr. Burkhouse's July 23, 2018 function-by-function assessment.

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

Nor did the ALJ's failure to give controlling weight to Dr. Burkhouse's July 23, 2018 function-by-function assessment, AR at 334-37, violate the so-called "treating physician rule" as Plaintiff argues. Plaintiff's Memorandum at 23-28. In said function-by-function assessment, Dr. Burkhouse assessed Plaintiff with moderate to marked limitations in maintaining social functioning, maintaining concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and responding appropriately to supervision and to co-workers, and a severe limitation in responding to customary work pressures. AR at 427-34.

Under the "treating physician rule," for disability benefits claims filed, like the instant claim, prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted). Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)). The failure to provide good reasons for rejecting a

13

treating physician's opinion is grounds for remand. *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). The opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence, 20 C.F.R. §§ 404.1527(d), 316.927(d); *Halloran*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)), "'and the report of a consultative physician may constitute such evidence.'" *Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)).

In the instant case, although the ALJ gave significant weight to Dr. Burkhouse's earlier psychological assessment rendered October 28, 2016, in which Dr. Burkhouse found Plaintiff with high functioning autism and moderate mental limitations which needed to be accommodated in a work setting, AR at 37 (citing AR at 303-06), the ALJ found Dr. Burkhouse's later opinion, rendered July 23, 2018, after Dr. Burkhouse treated Plaintiff for almost two years, was entitled to less weight because it was inconsistent with the record which supported no more than a moderate limitation in any one functional category, AR at 37, and substantial evidence supports this finding

14

including the consultative opinion of Dr. Billings who, after examining Plaintiff on January 24, 2017, rendered a medical source statement that found no evidence of limitation with regard to Plaintiff's ability to follow and understand simple directions and instructions, independently perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, independently perform complex tasks, or make appropriate decisions, but moderate limitation in appropriately dealing with stress, and marked limitation in adequately relating with others.  AR at 331-32.  Dr. Billings's medical source statement is consistent with the ALJ's RFC determination that limited Plaintiff to simple, repetitive work tasks involving no interaction with the public, occasional interaction with supervisors and co-workers, simple work-related decisions, and simple changes to work routine.  AR at 34-35.  *See Davis v. Comm'r of Soc. Sec.*, 2019 WL 1870814, at * 4 (W.D.N.Y. Apr. 26, 2019) (limiting work to occasional interaction with others accommodated the plaintiff's marked limitation in interacting with others); *Miller v. Berryhill*, 2017 WL 4173357 at * 5-6 (W.D.N.Y. Sept. 20, 2017) (work limitations attributed to the plaintiff's stress were adequately accommodated by restricting the plaintiff to unskilled jobs involving only occasional changes in the work environment, requiring only occasional work-related decisions and judgment, and not involving teamwork or collaboration).

The ALJ also found Dr. Burkhouse's function-by-function assessment of Plaintiff inconsistent with other evidence in the record, including Dr. Burkhouse's own treatment notes showing Plaintiff with normal mood and no anxiety.  *See*, *e.g.*, AR at 361 (May 12, 2017 annual physical noting Plaintiff's "[m]ood is normal.  Affect is normal.  Cognition is normal"); 433 (August 23, 2018 treatment session with Dr. Burkhouse reporting

15

Plaintiff's "[m]ood is good").  Further, the ALJ found Plaintiff's own description of his activities of daily living to be inconsistent with Dr. Burkhouse's function-by-function assessment of the limitations posed by Plaintiff's mental impairments.  See AR at 37 (citing AR at 233 (Plaintiff can clean, perform household repairs, prepare simple meals); 235 (Plaintiff reads, watches television, attends church, plays guitar, sings, plays cards); 282 (Plaintiff worked outside in the yard); and 469 (Plaintiff obtained his GED, assisted a friend with yard work, plays guitar and performs in a band with his father playing country western music, reads Latin and attends church where services are delivered in Latin)).  The ALJ found particularly significant that Plaintiff can read and understand Latin, which abilities were inconsistent with finding Plaintiff's RFC significantly more limited than the ALJ's formulation.  See Green v. Comm'r of Soc. Sec., 2018 WL 2269797, at * 3 (W.D.N.Y. May 17, 2018) (it was proper for ALJ to determine the plaintiff's activities of daily living were inconsistent with a finding of disability).  The ALJ also commented on Plaintiff's assertions that his attempts to find work were hampered by his inability to drive and problems with transportation, AR at 37 (citing AR at 209), a point which Plaintiff also made during the administrative hearing.  AR at 62.  Accordingly, the ALJ's decision to grant less than controlling weight to Dr. Burkhouse's July 23, 2018 function-by-function assessment of Plaintiff's psychiatric disorder is supported by substantial evidence in the record.

    Nor was the ALJ's consideration of Plaintiff's non-compliance with medical treatment and alcohol abuse improper in the context of Plaintiff's neurological, cognitive and psychiatric impairments without addressing whether Plaintiff had the capacity to control such behaviors, as Plaintiff argues.  Plaintiff's Memorandum at 28-29.  As

Plaintiff asserts, "'[w]hen a claimant suffers from mental illness, faulting him . . . for failing to pursue mental health treatment is a questionable practice.'" Plaintiff's Memorandum at 28 (quoting *Phakkhonkham v. Comm'r of Soc. Sec.*, 346 F.Supp.3d 370, 377 (W.D.N.Y. 2018)). Nevertheless, the record in the instant case is replete with references to Plaintiff admitting he was repeatedly advised by medical personnel and understood the need to remain compliant with medications and to control his drinking. *See*, *e.g.*, AR at 278 (Plaintiff admitting at June 18, 2015 annual physical at Westfield Family having a recent epileptic seizure which Plaintiff attributed to being out of his medication for four days); 353 (January 11, 2017 progress notes from primary care physician describing Plaintiff as having a "good understanding of medication regimen. Responding well to prescribed medications"); and 374 (May 21, 2018 annual physical notes indicating Plaintiff was having grand mal seizures because he was not regularly taking his prescribed medications, yet describing Plaintiff as having "good understanding of medication regimen. Responding well to prescribed medications"). Plaintiff also denied needing reminders to take his medications, AR at 233, and despite expressing some reluctance to new seizure medication prescribed in July 6, 2017, AR at 428, by November 2017, Plaintiff was taking the new medication. AR at 429. Plaintiff also admitted that abusing alcohol contributed to his seizures. AR at 429. On February 23, 2017, Plaintiff reported to Dr. Burkhouse he intended to give up alcohol for Lent to see if that reduced the frequency of his epileptic seizures. AR at 428. On July 10, 2018, Plaintiff reported he quit drinking which "improved his seizure control and overall health." AR at 435. On September 25, 2018, Plaintiff continued to report having reduced his alcohol consumption. AR at 456. Accordingly, there is no factual basis in

the record supporting Plaintiff's speculative argument that his mental impairments rendered Plaintiff unable to comply with his seizure medication management or to control his drinking.

In short, under the applicable deferential standard of review, there is no basis for rejecting the facts as found by the ALJ, which support that Plaintiff has the RFC for a full range of work at all exertional levels with non-exertional limitations to accommodate Plaintiff's mental limitations, because "'a reasonable factfinder would *have to conclude otherwise*.'" *Bonet ex rel. T.B.*, 523 Fed.Appx. at 58-59 (quoting *Brault*, 683 F.3d at 448 (italics in original)).  Accordingly, the ALJ's finding that Plaintiff was not disabled for a continuous 12-month period commencing June 1, 2015 through the date of the ALJ's decision is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 14) is DENIED; Defendant's Motion (Dkt. 15) is GRANTED.  The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   September 16th, 2021
         Buffalo, New York